FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11:30 am, Dec 29, 2025
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03129-DDD-KAS

Y.S.[1],
Plaintiff,
v.

**JOHN DOE, et al.,**
Defendants.

---

### PLAINTIFF'S MOTION FOR LIMITED DOCUMENT SUBPOENAS TO INTERNET SERVICE
### PROVIDERS

---

Plaintiff, appearing pro se, respectfully moves this Court for an order authorizing the issuance of limited subpoenas duces tecum to identified Internet Service Providers ("ISPs"), pursuant to Federal Rule of Civil Procedure 45 and 18 U.S.C. § 2703(c)(2), strictly consistent with the Court's November 25, 2025 Order (ECF 45), for the sole purpose of identifying the unknown individual(s) who executed the fraudulent cryptocurrency transactions alleged in the Complaint.

Records produced in response to the Court-ordered Onchain subpoena (ECF No. 48) appear to associate an individual with the cryptocurrency fraud at issue (Exhibits 1–3). However, these records are preliminary and subject to further investigation and verification. At this stage, the information is submitted solely to demonstrate the relevance and necessity of additional

---

[1] Plaintiff is proceeding under a pseudonym for purposes of this filing notwithstanding the Court's prior order denying Plaintiff's motion to proceed anonymously (ECF 53). Plaintiff has filed a motion for reconsideration of that order, which remains pending. Plaintiff uses a pseudonym temporarily to avoid irreparable disclosure of sensitive identifying information pending the Court's ruling and will promptly comply with any further direction of the Court once the motion for reconsideration is resolved.

identifying discovery, and not to assert liability or make any factual determination regarding responsibility.

This Motion does not seek to expand the scope of early discovery previously authorized. Rather, it identifies the specific Internet Service Providers necessary to effectuate the Court's Order based on records produced pursuant to that Order.

## I. PROCEDURAL POSTURE AND COURT AUTHORIZATION

On November 25, 2025 (ECF 45), the Court granted in part Plaintiff's request for early discovery and authorized limited third-party subpoenas under Rule 45 for the purpose of identifying unknown defendants, subject to strict scope, notice, and use limitations.

This Motion is submitted solely to implement that Order. It seeks authorization to issue subpoenas only to Internet Service Providers or downstream network operators, narrowly tailored to identifying the unknown defendant(s) responsible for the fraudulent conduct at issue.

## II. SUMMARY OF RECORDS PRODUCED BY ONCHAIN AND PRELIMINARY OBSERVATIONS

Onchain produced authenticated platform records generated in the ordinary course of business, including:

1. **IP activity logs** identifying "true_ip" source addresses, timestamps, device identifiers, and related metadata (Exhibit 1);

2. **Account user information** containing a user-provided name and contact details (Exhibit 2); and

3. **Withdrawal records** tied to a unique transaction identifier ("TXID") and destination wallet address, accompanied by user-information fields reflecting the account holder's full name (**Exhibit 3**).

4. These records were produced pursuant to subpoena and appear internally consistent on their face. Plaintiff relies on records produced directly by the service provider, not screenshots or user-generated exports.

The audit logs reflect a cryptocurrency withdrawal initiated on September 11, 2025, from an account associated with user information produced by Onchain. The inclusion of a name in Exhibits 2 and 3 is not intended to assert liability or culpability, but merely reflects data produced by Onchain, and the individual identified is a non-party at this stage of the litigation.

The logs indicate that the withdrawal was executed from device identifiers recorded by the platform and originated from IP addresses recorded in the "true_ip" field. The presence of separate proxy_ip fields in the logs confirms that Onchain distinguishes between proxy routing and true source IP values, reinforcing that the "true_ip" field reflects the ISP-assigned source connection captured prior to any VPN, proxy, or intermediary routing layer.

**Device Identifiers**

The logs reflect two distinct device identifiers, each recurring across multiple account events, including authentication activity and transaction-related events. The recurrence of these identifiers across sessions indicates continuity of access by one or more coordinated actors, rather than isolated or coincidental access.

**III. TRANSACTION CORRELATION AND BLOCKCHAIN CONSISTENCY**

Blockchain analysis shows that Plaintiff's stolen Bitcoin and the Bitcoin transferred through the account identified in the subpoenaed Onchain records followed the same downstream transaction pathway and utilized the same wallet infrastructure (**Exhibit 4**). Funds transferred through the Onchain-identified account were subsequently routed through a sequence

of downstream transfers that also appear in the tracing of Plaintiff's stolen assets, exhibiting the same ordering, consolidation behavior, and reuse of intermediary and consolidation mechanisms.

This convergence is not coincidental and indicates common control or coordinated operation of the transactions involved.

The blockchain analysis shown in **Exhibit 4** further confirms that transactions reflected in the Onchain records correspond exactly to transactions appearing in the tracing of Plaintiff's stolen funds, with matching transaction characteristics, timing, and amounts. This overlap establishes that the activity reflected in the Onchain records is materially connected to the movement of Plaintiff's stolen assets and supports the relevance and necessity of the requested identifying discovery.

## IV. NECESSITY OF ISP SUBSCRIBER RECORDS

Onchain does not control IP address assignment and cannot identify the subscriber associated with an IP address at a specific date and time. Only the assigning Internet Service Provider or downstream network operator maintains records capable of linking IP usage to a subscriber. Absent ISP subscriber and network-assignment records, Plaintiff cannot accurately identify or serve the defendant(s), and this action cannot proceed.

## V. SCOPE OF IP DATA RELIED UPON AND ISP TARGETS

The IP activity logs produced by Onchain contain numerous entries and multiple IP-related fields, including IPv4 addresses, IPv6 addresses, internal or private network addresses, DNS resolver IPs, and proxy-related fields.

Plaintiff clarifies the scope of reliance and requested subpoenas as follows:

- Plaintiff relies exclusively on ISP-assigned IPv4 addresses appearing in the "true_ip" field of the Onchain logs.

- There are twelve (12) unique ISP-assigned IPv4 "true_ip" addresses reflected in the logs.

- IPv6 addresses are expressly excluded and are not relied upon or sought by subpoena, as the Onchain logs reflect that subscriber attribution is based on IPv4 "true_ip" values.

- Private or internal NAT addresses (e.g., 172.30.x.x) are excluded, as they are not ISP-assigned and cannot be used for subscriber attribution.

- DNS resolver IP addresses are excluded, as they do not identify end-user subscribers.

- Proxy-related IP fields are excluded and are referenced solely to confirm that the platform distinguishes between proxy routing and true source IP values.

Each of the twelve IPv4 "true_ip" addresses corresponds to a discrete, material account event reflected in the Onchain audit logs, including account creation, authentication activity, security-related events, or transaction-related activity.

**ISP Assignment**

The subpoena targets differ by IP address, as reflected in Exhibit 5. ARIN registry records indicate that:

- Certain IP addresses were assigned by AT&T corporate entities; and
- Other IP addresses were assigned by Wake Forest University as the downstream network operator.

Plaintiff seeks authorization to subpoena only the entity shown by registry records to have controlled IP assignment at the relevant date and time, and will not issue subpoenas beyond that scope.

Plaintiff does not seek student records or educational records protected by FERPA and seeks only non-content network-assignment and authentication records necessary for technical attribution.

## VI. SCOPE OF INFORMATION REQUESTED (NON-CONTENT ONLY)

Each subpoena will be limited to non-content subscriber information authorized under 18 U.S.C. § 2703(c)(2), including:

- Subscriber name
- Current and permanent address
- Billing address
- Associated telephone number(s)
- Email address(es)
- Records sufficient to identify the subscriber assigned the IP address at the specified date and time

No content of communications is sought.

## VII. RULE 45 SAFEGUARDS

Plaintiff will comply with all safeguards imposed by the Court's November 25, 2025 Order (ECF 45), including notice, objection periods, preservation requirements, and use limitations.

## VIII. GOOD CAUSE

Good cause exists because Plaintiff cannot accurately identify or serve the defendant(s) without ISP subscriber information. The requested subpoenas are narrowly tailored, limited to non-content records, directed only to entities that controlled IP assignment at the relevant dates and time, and impose minimal burden.

## IX. RELIEF REQUESTED

Plaintiff respectfully requests that the Court authorize the issuance of limited subpoenas duces tecum to AT&T and Wake Forest University, consistent with the Court's November 25, 2025 Order. The subpoenas are sought for the sole purpose of identifying the individual or individuals who used the ISP-assigned IP addresses reflected in the Onchain logs at the relevant dates and times.

**Dated:** December 29, 2025

Respectfully submitted.

Y.S., Plaintiff, Pro Se