FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
5/4/2026
JEFFREY P. COLWELL, CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03129-DDD-KAS

Y.S.,
Plaintiff,

v.

John Doe, et al.,
Defendants.

---

### PLAINTIFF'S OBJECTION UNDER FED. R. CIV. P. 72(a) TO ORDER DENYING MOTION TO COMPEL NONPARTY COINBASE, INC.

---

Plaintiff Y.S., proceeding pro se, respectfully objects under Federal Rule of Civil Procedure 72(a) to the Court's March 19, 2026 Order denying Plaintiff's Motion to Compel compliance with a subpoena directed to nonparty Coinbase, Inc. ("Coinbase").

**INTRODUCTION**

This objection turns on a single, dispositive error: the Order denies discovery by answering a question the subpoena does not ask.

Plaintiff's subpoena seeks identifying information for accounts that Coinbase's internal records "attribute to" specified wallet addresses and transactions. That request targets Coinbase's internal attribution systems—how it links external blockchain activity to customer accounts through transactional records.

At the hearing, however, the Court reframed the inquiry as one of wallet ownership, asking whether Coinbase could identify who "owns" or "uses" the subject wallets. On that basis, the Court concluded that Coinbase lacked responsive information because the wallets were not Coinbase wallets.

That framing resolves a different and narrower question than the one presented. The subpoena does not require Coinbase to host or control the wallets. It asks whether Coinbase's own records link those wallets or transactions to customer accounts. By substituting an ownership-based inquiry for an attribution-based one, the Order bypasses the operative language of the subpoena and denies discovery on an incorrect premise.

Because the ruling rests on that misframing—and on a corresponding rejection of relevant attribution evidence—it is clearly erroneous and contrary to law under Rule 72(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff filed this action to recover cryptocurrency assets stolen by unknown defendants.

2. The Court authorized limited early discovery to identify those defendants, permitting subpoenas seeking identifying information including names, addresses, email addresses, telephone numbers, and IP addresses.

3. Plaintiff served a subpoena on Coinbase requesting identifying information for, inter alia: "Any Coinbase customer account that Coinbase's internal records attribute to the wallet addresses or TXIDs listed below."

4. Coinbase refused production, asserting that the wallets were not Coinbase-hosted.

5. Plaintiff moved to compel.

6. At the March 19, 2026 hearing, Coinbase disclosed that a preliminary internal search "returned over 70 accounts" that transacted with the subject wallets.

7. The Court denied the motion, concluding that Coinbase lacked responsive information because the wallets were not Coinbase wallets.

**II. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 72(a), a district judge must set aside any portion of a magistrate judge's order that is "clearly erroneous or contrary to law."

A finding is clearly erroneous when it cannot be reconciled with the record. A ruling is contrary to law when it applies an incorrect legal standard or misapplies governing law.

**III. THE ORDER RESTS ON A FACTUAL PREMISE THAT CANNOT BE RECONCILED WITH THE RECORD**

The Order rests on the premise that Coinbase has no records connecting Coinbase accounts to the subject wallets.

That premise cannot be reconciled with Coinbase's admission that its preliminary internal search identified over 70 accounts that transacted with those wallets. Coinbase's own position underscores this inconsistency: while it initially asserted that there was nothing to compel because the wallets were not Coinbase-hosted, it later disclosed at the hearing that its internal systems identified over 70 accounts connected to those transactions. Those accounts were identified through Coinbase's own internal systems linking customer accounts to the specified wallets via transaction activity. They therefore constitute accounts that Coinbase's records link to the subject wallets through identifiable transactional relationships—the precise category described in the subpoena. The 70-account dataset is responsive under the subpoena's plain language, because "attribute to" encompasses transactional linkage reflected in Coinbase's internal records, not merely ownership or control of the wallets.

A ruling premised on the absence of such records is therefore clearly erroneous.

**IV. THE ORDER RESOLVES A DIFFERENT QUESTION THAN THE ONE
PRESENTED**

In contrast to the Court's determination at the March 19, 2026 hearing, the subpoena does not seek to identify only those accounts that own or control the subject wallets; rather, it seeks identifying information for accounts that Coinbase's internal records "attribute to" specified wallet addresses and transactions, including through transactional linkage. At the hearing, however, the Court reframed the inquiry as one of wallet ownership, stating that "the relevant information you're seeking is who owns the wallets that were used to defraud you" and that "the defendants… are the owners or users of those wallets." Relying on that framing, the Court accepted Coinbase's position that "whoever owns or uses those wallets… [is] not with Coinbase," and rejected Plaintiff's request on the ground that "you're asking for who interacted with these scammers' wallets… [and] you're going to identify victims."

These statements reflect a fundamental misunderstanding of both the factual record and the nature of the information sought. The Court's conclusion rests on the unsupported premise that accounts interacting with the subject wallets would identify only victims. Transactional interaction datasets involving the scammers' wallets necessarily include not only victims, but also accounts controlled by the perpetrators, intermediary routing accounts, and exchange accounts through which funds were deposited or withdrawn. Because such linkage cannot be segregated ex ante, identification of unknown actors in cryptocurrency cases routinely proceeds through precisely this type of attribution evidence.

The Court further erred in requiring a preexisting evidentiary showing that specific accounts are the perpetrators, reasoning that Plaintiff had "no basis to believe" that the identified accounts were connected to the scammers. At the identification stage, however, such information

is not yet available; discovery is sought precisely to obtain it. Courts routinely permit targeted

discovery to identify unknown defendants even where the connection to wrongdoing is not yet

established, because the purpose of such discovery is to uncover that connection. The Court's

characterization of Plaintiff's approach as "indirect" likewise reflects a misunderstanding of how

attribution operates in cryptocurrency investigations, where identification necessarily proceeds

through transactional linkage rather than direct ownership records. This is particularly true where

patterns such as multiple transfers through the same wallets, closely timed transactions, and

routing through exchange-linked accounts suggest coordinated activity rather than isolated

victim conduct. While non-party status warrants careful regulation, it does not justify categorical

denial where the information sought is directly relevant and can be produced subject to

reasonable limitations or protective measures. By requiring a level of proof that can only be

obtained through the requested discovery, and by rejecting the only viable method of identifying

the defendants, the Court imposed constraints not grounded in Rule 26 or Rule 45.

## V. THE ORDER MISCONSTRUES ECF NO. 48

ECF No. 48 authorizes discovery "for the purpose of obtaining information to identify the

unknown defendants."

At the hearing, however, the Court limited that authorization: "So I said the defendant's

names. I didn't say victim's names."

The Court then equated defendants with wallet owners and denied discovery accordingly.

That limitation does not appear in ECF No. 48. The Order authorizes discovery to identify

defendants—not merely to confirm wallet ownership.

In cryptocurrency investigations, attribution through transactional pathways is a primary method of identifying actors. By restricting discovery to ownership alone, the Order forecloses this necessary investigative method.

## VI. THE ORDER APPLIES AN UNDULY NARROW RELEVANCE STANDARD

The Order concludes that accounts interacting with the wallets are irrelevant because they may belong to innocent third parties.

This reasoning conflicts with Rule 26. Discovery is permitted where it may lead to identifying responsible parties, even if it includes non-culpable individuals.

Here, the requested information provides a necessary pathway to identifying the perpetrators. By treating the possibility of innocent accounts as a categorical bar, the Order applies an unduly restrictive relevance standard.

## VII. THE "FISHING EXPEDITION" CHARACTERIZATION IS CONTRARY TO THE RECORD AND GOVERNING LAW

At the hearing, the Court characterized Plaintiff's request as a "fishing expedition," describing it as "looking for a needle in a haystack." That characterization cannot be reconciled with the record or governing law. This is not a fishing expedition—it is the opposite: a targeted request for a defined and finite set of accounts, already identified by Coinbase, that are directly tied to the scammers' fraudulent activity.

First, the request is not speculative. Coinbase confirmed that its internal systems identified over 70 accounts that transacted with the specified wallets. The relevant dataset has already been identified by Coinbase itself. Plaintiff does not seek to search blindly; he seeks identifying information for a defined set of accounts already located through Coinbase's own records.

Second, the Court's characterization is inconsistent with established precedent governing early discovery to identify unknown defendants. Courts routinely permit early discovery that implicates multiple accounts or users where the information is necessary to identify wrongdoers—even when some of those accounts may ultimately belong to innocent parties. In *Sony Music Entertainment Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004), the court held that the potential inclusion of non-culpable individuals does not bar disclosure because such information is essential to identifying the actual wrongdoers. Likewise, *Arista Records LLC v. Does 1–19*, 551 F. Supp. 2d 1, 6 (D.D.C. 2008), approved early discovery despite the possibility that innocent subscribers might be swept in, emphasizing that plaintiffs cannot identify defendants without such information. District courts have repeatedly followed the same approach, including in *Hard Drive Productions, Inc. v. Does 1–90*, 2012 WL 1094653, at *2–3 (N.D. Cal. Mar. 30, 2012)*, and *Malibu Media LLC v. Does 1–16*, 2012 WL 5987854, at *3 (E.D. Pa. Nov. 30, 2012)*, each recognizing that the presence of innocent accounts does not justify withholding discovery needed to identify the perpetrators. These cases uniformly hold that such concerns are addressed through tailored production, protective measures, or later refinement—not categorical denial of discovery at the outset.

Third, the requested information is not random or untethered. It is limited to accounts that engaged in specific, traceable transactions with wallets used in the fraud. Those transactional relationships form a direct and logical pathway to identifying the perpetrators. In the cryptocurrency context, courts recognize that exchanges maintain internal records linking external transactions to customer accounts and may be compelled to produce such attribution information. See *Diamond Fortress Techs., Inc. v. EverID, Inc.*, No. 19-337-LPS, 2022 WL

2239826, at *3–4 (D. Del. June 22, 2022) (compelling production of identifying information tied to wallet activity notwithstanding burden and privacy objections).

Finally, even if the Court had concerns regarding scope, Rule 45 required consideration of narrowing rather than outright denial. The Court should have considered reasonable limitations, such as narrowing the time period, restricting the request to specific transactions, or focusing on proximate interactions—none of which were meaningfully addressed.

In summary, labeling this request a "fishing expedition" mischaracterizes both the facts and the law. The data set has already been identified by Coinbase; the only remaining step is disclosure of the associated account information. Courts routinely permit discovery involving multiple accounts where necessary to identify wrongdoers, even if some accounts may ultimately be non-culpable. The possibility of innocent accounts does not justify withholding all responsive information. The Court's contrary conclusion imposes a categorical bar not recognized under Rule 26 or Rule 45 and therefore constitutes reversible legal error.

## VIII. RULE 45 REQUIRED CONSIDERATION OF NARROWING

Rule 45 contemplates both quashing and modification, and courts routinely favor narrowing where feasible rather than denying discovery outright. The Rule provides that a court "must quash or modify a subpoena" that is overbroad or unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). This disjunctive structure reflects that where a defect can be cured through narrowing, the proper course is modification; quashing is appropriate only when modification would be ineffective. Courts consistently apply this principle by tailoring subpoenas rather than denying discovery outright. See, e.g., *Jordan v. Virginia Department of Corrections*, 921 F.3d 180, 189 (4th Cir. 2019) (explaining that courts should limit the scope of discovery rather than deny it altogether where possible); *Wiwa v. Royal Dutch Petroleum Co.*,

392 F.3d 812, 818 (5th Cir. 2004) (holding that courts must balance burden and relevance and modify subpoenas when appropriate rather than quash them entirely).

Rule 45 further requires that objections be stated with specificity. A subpoenaed party "may serve on the party or attorney designated in the subpoena a written objection… stating the grounds for objecting." Fed. R. Civ. P. 45(d)(2)(B). The Rule thus contemplates a structured process: specific objections, followed by judicial resolution and, where appropriate, tailored modification of the subpoena's scope.

Here, Plaintiff expressly proposed a concrete narrowing of the subpoena. Specifically, Plaintiff offered to "limit the scope of the subpoena to only those two months… August, September, and beginning of October… and limit it to that specific time window." This proposal directly addressed the Court's concerns regarding breadth and the number of implicated accounts.

The Court acknowledged that the proposal was narrower but rejected it without further inquiry, stating: "Even though it is narrower, it is still broader than what I had authorized…" The Court then denied the motion in full. The Court did not consider additional narrowing mechanisms, partial production, staged disclosure, anonymization, or any other means of tailoring the subpoena to address perceived burden or privacy concerns.

Instead, the Court adopted a categorical approach, characterizing the request as "a fishing expedition… looking for a needle in a haystack," and declining to "compel Coinbase to produce this information." This reflects not a modification analysis, but an all-or-nothing rejection.

This is the critical error. While Rule 45 permits quashing, it requires consideration of whether reasonable modification can cure any defect. Where a subpoena may be overbroad in part, the Rule contemplates tailored relief—not categorical denial. By rejecting a proposed

narrowing and failing to consider additional modifications, the Court bypassed the framework

mandated by Rule 45. The failure to apply that framework renders the Order contrary to law

under Rule 72(a).

**IX. CONCLUSION**

The Order rests on a fundamental misalignment between the question presented and the

question decided.

The subpoena seeks information that Coinbase's internal records attribute to specified

wallets and transactions. The Court instead evaluated whether Coinbase could identify who owns

those wallets and denied discovery on that basis.

That analytical shift is outcome-determinative. By substituting an ownership-based

inquiry for an attribution-based one, the Court denied discovery on an incorrect premise.

For these reasons, the Order is clearly erroneous and contrary to law under Rule 72(a).

Plaintiff respectfully requests that the Court set aside the Order and grant appropriate

relief.

Dated: May 4, 2026

Respectfully submitted,

/s/ Y.S.
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I served a copy of the foregoing PLAINTIFF'S OBJECTION UNDER FED. R. CIV. P. 72(a) TO ORDER DENYING MOTION TO COMPEL NONPARTY COINBASE, INC. by email on:

• Alexandra Mayhew, Cooley LLP (counsel for nonparty Coinbase, Inc.)


/s/ Y.S.
Plaintiff, Pro Se