**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*12:09 pm, Jun 04, 2026*
**JEFFREY P. COLWELL, CLERK**

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03129-DDD-KAS

Y.S.,
Plaintiff,

v.

John Doe, et al.,
Defendants.

## PLAINTIFF'S RULE 72(a) OBJECTION TO ORDER DENYING PSEUDONYMITY

### I. INTRODUCTION

Plaintiff respectfully submits this Amended Rule 72(a) Objection to the Magistrate Judge's March 19, 2026 Order (ECF No. 83) denying leave to proceed under a pseudonym. The Order is clearly erroneous and contrary to law because it:

- applies an incorrect legal standard;

- improperly discounts an explicit death threat;

- relies on inapposite extreme comparators;

- misapprehends the risk created by public disclosure; and

- fails to conduct the required balancing analysis under governing law.

Absent relief, Plaintiff's identity will be publicly disclosed, resulting in irreversible harm. Plaintiff respectfully requests that the Court consider this Objection together with Plaintiff's prior filings regarding pseudonymity, including the Motion for Reconsideration (ECF No. 56) and supporting submissions. This Objection is intended to supplement—not replace—those

filings, and Plaintiff incorporates them by reference to the extent they are consistent with and support the arguments presented herein.

## II. BACKGROUND: DOCUMENTED THREATS AND DOXING

Plaintiff's request for pseudonymity arises from documented threats of violence, doxing, and hate-based targeting directly tied to the underlying events of this case (ECF No. 2-1. In ECF No. 2, Exhibit 1 is part of the motion and is not submitted as a separate exhibit). These threats were explicit, immediate, and supported by contemporaneous evidence.

On September 25, 2025, following Plaintiff's confrontation of a perpetrator regarding cryptocurrency fraud, the perpetrator sent messages containing direct death threats and hate-based statements, including:

- "You bitch, I'm going to send a hitman after you!"

- "They will find you before 12 o'clock tomorrow… They will kill you."

The perpetrator further escalated the threat by asserting that a hitman had already been contacted and that Plaintiff's home address had been identified. The perpetrator then publicly disclosed Plaintiff's residential address in Denver, Colorado.

The messages also included antisemitic statements such as:

- "You damn Jew!!"

- "Hitler was right, Jews should be exterminated!"

These communications reflect:

- explicit threats of lethal violence;

- confirmed knowledge of Plaintiff's physical location; and

- ideologically motivated hostility.

Plaintiff reported the incident to law enforcement and filed a complaint with the FBI's Internet Crime Complaint Center (IC3).

The threats occurred in the context of a broader fraudulent scheme involving unidentified actors. Plaintiff does not know the identity, location, or number of individuals who may have access to this information. Accordingly, the risk extends beyond a single known actor to unknown participants who may obtain Plaintiff's identity through public disclosure.

## III. STANDARD OF REVIEW AND GOVERNING LAW

Under Federal Rule of Civil Procedure 72(a), a district judge must modify or set aside any portion of a magistrate judge's order that is "clearly erroneous or contrary to law."

Under Tenth Circuit authority, pseudonymity is appropriate in exceptional circumstances where there is a credible risk of harm. Courts in this Circuit emphasize that pseudonymity is warranted where disclosure would expose a party to a real danger of physical harm or a similarly serious risk. Courts must balance:

• the plaintiff's privacy and safety interests;

• the public interest in open proceedings; and

• any prejudice to opposing parties.

See *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 411 (10th Cir. 2005); *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).

Courts recognize that:

• a single severe threat may suffice;

• severity and context outweigh frequency; and

• risk must be evaluated in light of public disclosure.

The relevant inquiry is whether there is a credible, non-speculative risk of harm—not whether harm is guaranteed.

Proper application of the governing standard requires balancing the severity and credibility of the threatened harm against the public's interest in disclosure. Where disclosure creates a material risk of harm and Plaintiff's identity is not necessary to the public's understanding of the proceedings, the balance weighs in favor of pseudonymity.

As applied here, Plaintiff's evidence of a direct death threat, confirmed doxing, and exposure within a coordinated multi-actor enterprise falls squarely within these principles.

## IV. THE ORDER APPLIED AN INCORRECT LEGAL STANDARD

The Magistrate Judge applied a heightened and incorrect legal standard by placing dispositive weight on:

• the fact that the threat occurred only once;

• the absence of subsequent threats; and

• comparisons to extreme cases.

At the hearing, the Court explicitly emphasized that the threat occurred "once[1]" and that there were "no threats since then … no indication that people are following you…," demonstrating that repetition was treated as a dispositive factor in the analysis.

Nothing in controlling law requires multiple threats or escalation. By treating repetition and severity comparisons as dispositive, the Court imposed requirements not recognized under governing law. This constitutes legal error under Rule 72(a).

---

[1] Quotations and references to the Court's statements are drawn from the audio recording of the March 19, 2026 hearing provided by the Court.

This is not a case of discretionary weighing within a permissible range of outcomes. The Magistrate Judge applied criteria—such as requiring multiple threats, ongoing conduct, or comparisons to extreme factual scenarios—that are not part of the governing legal standard. Because the Order rests on an incorrect legal framework, it constitutes legal error, not merely a difference in judgment, and is therefore contrary to law under Rule 72(a).

## V. THE COURT IMPROPERLY DISCOUNTED AN EXPLICIT DEATH THREAT

The risk here is not speculative. It is grounded in a direct and explicit death threat, confirmed doxing of Plaintiff's home address, and the existence of a coordinated, resource-backed, multi-actor criminal enterprise (ECF No. 56). These facts establish a concrete and credible risk of harm under governing law.

The Court accepted that the threat was real and severe, but discounted it based solely on its singular occurrence and surrounding context. Those considerations are not part of the governing legal standard.

The Court acknowledged that:

- threatening to kill someone is severe; and

- Plaintiff's fear was understandable.

However, it discounted the legal significance of that threat because:

- it occurred only once;

- it was delivered via text message; and

- it was not followed by additional conduct.

At the hearing, the Court specifically noted that the threat "was a text message" and emphasized the absence of evidence such as surveillance or continued contact, further demonstrating reliance on factors outside the governing legal framework.

This analysis is legally flawed.

The absence of additional threats does not reflect a lack of seriousness or risk. It reflects Plaintiff's immediate protective action in blocking further communications from the perpetrator. The resulting lack of repetition is therefore not probative of reduced risk.

The credibility of a threat turns not on its repetition, but on the combination of intent and practical capability. Courts evaluating risk focus on whether a threat can realistically be carried out under the circumstances, not merely on whether it was repeated or accompanied by additional acts. Where a threat reflects both an expressed intent to cause harm and a plausible means of execution, it establishes a credible risk of harm sufficient to warrant protective measures.

A single explicit death threat—particularly in the context of a broader scheme—is inherently severe and sufficient to establish a credible risk of harm. The relevant inquiry is not whether the individual who made the threat personally intends or is able to act in isolation, but whether, in context, the threat reflects a realistic capacity to be carried out.

Here, the threat did not arise in isolation. It occurred within the framework of a coordinated, multi-actor cryptocurrency fraud operation involving unknown participants operating across jurisdictions. As reflected in the record, stolen assets were laundered through a complex network of wallets and ultimately pooled into a Binance-linked custodial cluster holding over 23,000 BTC (approximately $2 billion) as of November 2025. This reflects a structured, resource-backed, and transnational enterprise (ECF No. 56).

In that context, the capacity to execute harm cannot be evaluated as if the threat originated from a lone individual acting independently. The structure of the enterprise creates a realistic possibility that harm could be carried out indirectly, including through other participants

or third parties, potentially outside the United States. The ability to operate across jurisdictions and coordinate among multiple participants materially increases the plausibility that the threat could be carried out indirectly through third parties whose identities and locations are unknown.

By focusing on the absence of repetition rather than the presence of both intent and realistic capability, the Court applied the wrong legal framework. This misapplication constitutes legal error under Rule 72(a).

The Court did not question the authenticity or seriousness of the threat; it discounted it based on factors not required under governing law.

## VI. THE COURT RELIED ON INAPPOSITE AND EXTREME COMPARATORS

The Court evaluated Plaintiff's request by comparing it to cases involving extreme scenarios such as human trafficking, detention, and repeated physical abuse. While such cases justify pseudonymity, they do not establish a minimum threshold.

By treating these extreme scenarios as implicit benchmarks, the Court elevated the standard and failed to apply the required balancing test.

## VII. THE COURT MISAPPREHENDED THE RISK CREATED BY PUBLIC DISCLOSURE

The Court suggested that anonymity would provide only "peace of mind," asking "What would anonymity do for you, other than give you some peace of mind?" This reflects a misunderstanding of the risk.

The relevant inquiry is not whether one actor may already know Plaintiff's identity, but whether public disclosure would expand that knowledge to unknown and potentially dangerous third parties. Courts recognize that the risk analysis must account for the incremental harm caused by public dissemination, not merely existing exposure.

Once disclosed through PACER, Plaintiff's identity becomes:

• globally accessible;

• permanently searchable; and

• available to unknown actors.

Public disclosure materially increases the risk of harm.

When properly weighed, the balance strongly favors pseudonymity. Plaintiff faces a demonstrated and non-speculative risk of harm from public disclosure, while the public has no meaningful interest in disclosure of Plaintiff's identity at this stage. Plaintiff's identity is not necessary to understand the claims, the issues, or the Court's rulings. Under these circumstances, the presumption of public access is outweighed by Plaintiff's safety interests.

## VIII. THE ORDER FAILED TO ACCOUNT FOR A MULTI-ACTOR CRIMINAL CONTEXT

Unrebutted evidence demonstrates that Plaintiff's claims arise from a coordinated, multi-actor operation rather than an isolated dispute. This context materially increases the risk associated with public disclosure.

As detailed in ECF No. 56, stolen assets were laundered through a network of wallets and pooled into a Binance-linked cluster holding over 23,000 BTC (approximately $2 billion), reflecting a large, structured, and transnational criminal enterprise.

Although one actor may already know Plaintiff's identity, many other participants do not. Public disclosure would materially increase the risk that Plaintiff's identity could be disseminated to additional unknown actors.

At the hearing, the Court suggested that "the cat is out of the bag," implying that anonymity would offer limited protection. That reasoning misunderstands the nature of the risk.

The relevant inquiry is not whether some disclosure has already occurred, but whether judicial disclosure would expand dissemination of Plaintiff's identity to unknown and potentially dangerous third parties. Public filing on PACER materially increases that exposure by making Plaintiff's identity globally accessible and permanently searchable.

Courts recognize that anonymity remains appropriate even where some actors already know a plaintiff's identity, because the purpose is to prevent broader dissemination. See *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122–23 (10th Cir. 2012); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).

The Order did not meaningfully address this context, undermining its analysis.

## IX. THE ORDER FAILED TO CONSIDER LESS RESTRICTIVE ALTERNATIVES

Courts must consider less restrictive alternatives. The Order does not reflect meaningful consideration of these alternatives.

These measures are insufficient without pseudonymity. Once Plaintiff's identity is publicly disclosed, sealing or redaction cannot prevent dissemination. Pseudonymity is the only mechanism that prevents the initial disclosure and resulting irreversible harm.

Accordingly, the failure to grant pseudonymity cannot be justified on the basis of alternative measures, because those measures do not address the core harm—the initial public disclosure of Plaintiff's identity.

## X. IRREVERSIBILITY OF DISCLOSURE

Public disclosure of Plaintiff's identity is:

- permanent;
- global; and
- irreversible.

Once disclosed, it cannot be undone.

## XI. CONCLUSION

The Magistrate Judge:

- applied an incorrect legal standard;

- improperly discounted an explicit death threat;

- relied on extreme comparators;

- misapprehended the risk of disclosure; and

- failed to conduct the required balancing analysis.

Accordingly, the Order is clearly erroneous and contrary to law. When the correct legal standard is applied to the undisputed facts, the only permissible outcome is to permit Plaintiff to proceed under a pseudonym. The Order's contrary conclusion rests on legal error and must be set aside.

## XII. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

- Sustain this Rule 72(a) Objection;

- Set aside the Magistrate Judge's Order (ECF No. 83); and

- Permit Plaintiff to proceed under a pseudonym or impose appropriate protective measures.

**Dated:** May 4, 2026

Respectfully submitted,

/s/ Y.S.
Plaintiff, Pro Se