IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03129-DDD-KAS

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11:21 am, Jul 20, 2026
JEFFREY P. COLWELL, CLERK

Y.S.,

Plaintiff,

v.

JOHN DOE et al.,

Defendants.

---

**PLAINTIFF'S OBJECTION UNDER FED. R. CIV. P. 72(a) TO
MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFF'S MOTION TO
COMPEL BINANCE HOLDINGS LIMITED / BINANCE.COM AND
RENEWED MOTION FOR LEAVE TO ISSUE NARROW FOLLOW-UP
SUBPOENA TO AT&T**

---

Plaintiff Y.S., proceeding pro se, objects under Fed. R. Civ. P. 72(a) to the Magistrate

Judge's June 17, 2026 ruling at ECF No. 131, which denied Plaintiff's Motion to Compel

Compliance with Court-Authorized Subpoena Directed to Binance Holdings Limited /

Binance.com, ECF No. 100, Plaintiff's Renewed Motion for Leave to Issue Narrow Follow-Up

Subpoena to AT&T, ECF No. 109, and related relief requested in Plaintiff's Notice of Binance

Holdings Limited's Failure to Respond or Comply and Request to Compel Production, ECF No.

112.

Plaintiff preserves the arguments and record citations in ECF Nos. 100, 109, and 112.

Plaintiff requests that the District Judge modify or set aside the challenged ruling because it is

clearly erroneous and contrary to law. Hearing citations refer to the June 17, 2026 hearing

audio/transcript ("Hr'g Tr.") and use audio timestamps.

1

## I. INTRODUCTION

The ruling should be set aside because it did not merely deny discovery; it effectively deprived the Court's prior Doe-identification orders of practical effect without providing a workable cure. It disregarded that Plaintiff used the service method the Court authorized, that BHL's U.S. counsel admitted actual receipt, and that BHL filed no motion, response, docketed objection, or sworn declaration.

The ruling also accepted, as though proven, BHL's private and unsworn assertion that it lacked possession, custody, or control of Binance.com identifying records. But BHL did not say the records do not exist; it identified Binance-related ADGM/Nest entities as record holders. That distinction required a sworn corporate declaration, preservation order, clarification of the proper Binance entity, or leave to cure service—not a futility finding based on a private letter.

The subpoena was narrow. Plaintiff did not seek account balances, trading history, communications, analytics, device fingerprints, session logs, or merits discovery. Plaintiff sought only the limited identifying information the Court had already authorized so unknown cryptocurrency-fraud defendants could be identified.

The AT&T follow-up subpoena was also narrow. If an IP address is assigned to an enterprise customer, institution, reseller, downstream provider, or smallest netblock assignee rather than a natural person, identifying that assignee is not broader merits discovery; it is the necessary next step in identifying the Doe defendant.

In short, the ruling overlooked actual notice, BHL's lack of Rule 45 motion practice, the absence of sworn evidence, and the need for corrective discovery to make the Court's prior early-discovery orders meaningful. Those errors warrant relief under Rule 72(a).

2

## II. STANDARD OF REVIEW

Under Rule 72(a), the District Judge must modify or set aside any part of a magistrate judge's non-dispositive order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). An order is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. An order is contrary to law when it fails to apply or misapplies the governing legal standard, procedural rule, or controlling authority.

This objection challenges whether BHL's unsworn private letter could establish no control and futility, and whether the ruling misapplied the Court's prior alternative-service authorization and Rule 45 procedures.

## III. RELEVANT BACKGROUND

### A. The Court authorized early discovery to identify unknown defendants.

This case concerns alleged cryptocurrency fraud by unknown defendants. The Court recognized the need for targeted Doe-identification discovery and later authorized additional discovery and alternative service, including email service, to reach a foreign entity. (ECF Nos. 48, 83.)

### B. Plaintiff sought Binance.com discovery after Binance.US directed Plaintiff to Binance.com.

Plaintiff did not pursue Binance.com speculatively. After Plaintiff first pursued Binance.US / BAM Trading, Binance.US represented that it had performed a diligent review, found no responsive records on the BAM Trading platform, stated that Binance.US and Binance.com are separate entities, and directed Plaintiff to contact Binance.com at legal@binance.com for Binance.com-related records. (ECF No. 60-1.) That representation

3

matters because it directed Plaintiff to Binance.com and undermines any later suggestion that the Binance.com subpoena was speculative, misdirected, or improper.

Plaintiff then obtained leave for limited early discovery directed to Binance.com and alternative service on Binance Holdings Limited / Binance.com. (ECF No. 83.)

The resulting subpoena sought only identifying information—names, addresses, billing addresses, email addresses, telephone numbers, and IP addresses—associated with accounts tied to specified wallet activity. It did not seek communications content, trading history, balances, internal reports, analytics, device fingerprints, session logs, or merits discovery.

**C. BHL admitted receipt but did not file a motion or sworn declaration.**

BHL's U.S. counsel sent Plaintiff a private letter dated May 11, 2026 (ECF No. 112-1). That letter admitted that BHL received Plaintiff's subpoena, the Court's March 19, 2026 Minute Entry granting alternative service, and Plaintiff's motion to compel.

BHL did not file a motion to quash, seek a protective order, move to reconsider or vacate the alternative-service order, file a response on the docket, submit a sworn declaration, or produce the limited identifying information. Instead, BHL raised objections only through a private unsworn letter to Plaintiff.

BHL's private letter did not state that the requested identifying records do not exist. Instead, BHL asserted that the information is in the possession, custody, or control of Binance-related ADGM entities, including Nest Exchange Limited, Nest Clearing and Custody Limited, and Nest Trading Limited. That distinction matters because the dispute concerns corporate control, access, preservation, and proper process for Binance.com records, not nonexistence.

**D. The June 17 hearing ruling relied on BHL's private letter and email position.**

At the hearing, the Court read Binance's generic email response stating that Binance does not accept service of legal process by email and reserves rights to challenge use of legal@binance.com for service. Hr'g Tr. 1:51–2:31. The Court then stated: "I don't know what I can compel because there has not been valid service of this subpoena." Id. 2:43–2:54.

When Plaintiff explained that the Court itself had authorized email service, the Court responded: "despite my court order, I mean, I'm not God. I can't say, okay, by dictate, I determine that Binance's procedures and policies go by the wayside." Id. 4:11–4:29. The Court later ruled that service was ineffective because Binance "specifically indicate[d]" that it did not accept service that way. Id. 9:33–10:00.

The Court also relied on BHL's private letter regarding foreign-entity status, ADGM/UAE issues, and possession/control. The Court stated that BHL's letter said BHL did not have possession, custody, or control of the information requested and concluded, "So they've told you they have nothing." Id. 7:43–8:08.

**E. Plaintiff sought a narrow AT&T follow-up subpoena concerning one IP address.**

Plaintiff also sought leave to issue a narrow follow-up subpoena to AT&T concerning IP address 207.104.41.106. He did not seek broad discovery, communications content, or merits discovery, but only non-content identifying and assignment information to determine who or what entity was assigned the IP address at relevant times.

At the hearing, Plaintiff explained that the original subpoena focused on individuals, but AT&T had not identified an individual, so the renewed subpoena sought whether an institution, company, or other entity was assigned the IP address. Hr'g Tr. 12:09–12:59. The Court denied the renewed motion because it had authorized discovery to determine who the individuals were and would not permit "broader discovery." Id. 13:14–13:39.

5

## IV. SPECIFIC OBJECTIONS

**A. The ruling allowed Binance's private service policy to override the Court's prior alternative-service authorization.**

The ruling is clearly erroneous and contrary to law because the motion to compel was denied based on a purported service problem, even though Plaintiff used the email method the Court previously authorized.

Plaintiff did not select an unauthorized service method on his own. Plaintiff relied on the Court's March 19, 2026 order authorizing alternative service through Binance.com's legal email address. At the hearing, Plaintiff explained exactly that. Hr'g Tr. 4:00–4:11.

The Court nevertheless ruled that service was ineffective because Binance's response and internal service policy stated that Binance does not accept service at legal@binance.com. Id. 1:51–2:31; 9:33–10:00. Respectfully, a recipient's private service policy does not, standing alone, determine the legal effect of a service method authorized by the Court and actually received by BHL's counsel.

Plaintiff submits that service was effective under the Court's prior alternative-service authorization because Plaintiff used the Court-authorized email method, BHL received actual notice, and BHL's U.S. counsel admitted receipt.

Respectfully, the issue was not whether the Court could disregard Binance's private procedures "by dictate." The issue was whether Plaintiff could rely on the Court's own prior alternative-service authorization. A subpoena recipient's private service policy should not have been treated as overriding an operative court order that Plaintiff relied on in serving the subpoena, particularly where BHL never moved to vacate, modify, or reconsider that authorization.

6

At most, Binance's email response was a generic mailbox notice stating that legal@binance.com was restricted and that Binance did not accept service by email. It was not a motion, sworn declaration, or judicially tested objection. Nor was there any evidentiary record establishing that the notice could override the Court's prior authorization of email service.

By treating Binance's private policy and generic email response as dispositive, the ruling effectively departed from, and nullified the practical effect of, the Court's prior Doe-identification and alternative-service orders without formally modifying, vacating, or explaining the legal basis for doing so.

If the Court concluded that its prior authorization was legally insufficient, the proper remedy was to identify the defect and allow a cure, not deny enforcement outright. At minimum, the ruling should have been without prejudice, with leave to re-serve by any method the Court deemed sufficient and preservation during the service dispute.

**B. BHL's objections were not presented through Rule 45 motion practice or a sworn record.**

BHL never filed a motion to quash under Rule 45. BHL never filed a protective-order motion. BHL never filed a response to Plaintiff's motion to compel. BHL never moved to reconsider or vacate the Court's alternative-service authorization. BHL never submitted a sworn declaration.

BHL's own letter confirms that it understood these issues required a challenge. In that letter, BHL stated that it "reserve[d] the right to challenge the Subpoena and Motion" and separately reserved the right to challenge the Court's Minute Entry authorizing alternative service. ECF No. 112-1. But BHL never presented any such challenge through a motion,

7

response, objection, or sworn declaration filed on the docket. That omission matters because the Court treated BHL's private objections as if they had been properly presented and proven.

Plaintiff raised this procedural defect at the hearing, explaining that BHL's position came through "a private email," was "not a legal filing with the court," and was "not even a sworn declaration." Hr'g Tr. 6:56–7:27; 8:57–10:23.

Plaintiff does not contend that actual notice automatically waives every service or jurisdiction objection. Plaintiff's objection is narrower: BHL had actual notice and counsel, but it did not invoke the Court's procedures. If BHL wished to challenge the subpoena, service, control, or enforceability, it should have presented those issues through a proper filing and, where factual assertions were made, through a sworn declaration.

**C. The ruling treated BHL's unsworn private letter as dispositive evidence of no control and futility.**

BHL's private May 11, 2026 letter, filed as ECF No. 112-1, asserted that BHL lacks possession, custody, or control of the requested information and that the information is held by ADGM Binance entities. Those factual assertions were not supported by a sworn declaration from a knowledgeable corporate representative and were not tested through ordinary motion practice.

BHL's own description of the ADGM/Nest entities should not have ended the inquiry. Binance's public statements, filed as ECF No. 112-2, represented that Binance.com services would be provided through Nest Exchange Limited, Nest Clearing and Custody Limited, and Nest Trading Limited, while users' products, services, UID, login credentials, balances, order history, and trading functions would remain continuous. Those statements support operational

continuity and explain why BHL's private entity-separation position required a sworn factual record.

Plaintiff has not yet proven BHL's control over every Binance.com record. The point is narrower: BHL's unsworn no-control assertion should not have been treated as dispositive without a knowledgeable corporate declaration addressing the relationship among BHL, Binance.com, and the ADGM/Nest entities; who has the records; whether BHL has the legal right, contractual access, operational ability, practical ability, corporate authority, or other ability to obtain or preserve them; and what legal process BHL contends is required.

The Supreme Court has held that Hague Convention procedures are not exclusive or mandatory and do not create a categorical bar on federal discovery involving foreign evidence or foreign entities. Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa, 482 U.S. 522, 539–46 (1987). Comity concerns require judicial supervision and particularized analysis, not categorical acceptance of a foreign party's position. Id. at 543–46; see also Daimler-Benz Aktiengesellschaft v. U.S. Dist. Ct., 805 F.2d 340, 341–42 (10th Cir. 1986), cited in Aérospatiale, 482 U.S. at 541.

At the hearing, however, the Court treated BHL's assertions as dispositive. The Court stated that BHL's letter said BHL did not possess the information, concluded, "So they've told you they have nothing," and then denied the motion as "an exercise in futility." Hr'g Tr. 7:43–8:08; 10:06–10:25. That futility finding was made without an evidentiary record, sworn declaration, or docketed motion testing BHL's assertions.

If an unsworn private letter can establish futility, a foreign subpoena recipient could avoid Court-authorized Doe-identification discovery simply by asserting that a related foreign entity holds the records. At minimum, the Court should have required BHL to file a sworn

9

declaration addressing who has the records, whether BHL can access or obtain them, what legal process BHL contends is required, and whether the records will be preserved.

Public enforcement records concerning Binance Holdings Limited further underscore why BHL's foreign-entity, jurisdiction, and no-control assertions required sworn evidence and judicial review rather than informal acceptance of an unsworn letter. Plaintiff does not ask the Court to compel production based on those records alone; he cites them only to show that BHL's private assertions required proper motion practice, a sworn record, and tailored judicial analysis.

**D. The Court did not reconcile its foreign-service concerns with its earlier alternative-service authorization.**

The Court stated that BHL is a foreign entity, that the relevant Binance.com entities are connected to ADGM/UAE, and that foreign subpoenas or disclosure orders are not automatically enforceable in the UAE. Hr'g Tr. 5:42–7:00. Plaintiff does not ask the Court to disregard foreign law. Plaintiff's objection is that the ruling did not reconcile those concerns with the Court's earlier alternative-service authorization.

If the Court concluded that the prior alternative-service order was legally insufficient, the Court should have explained why, identified the correct method, and permitted a cure. It should not have denied the motion as if Plaintiff had unilaterally chosen an unauthorized service method. Plaintiff served the subpoena through the method the Court authorized.

**E. The AT&T follow-up subpoena sought the next necessary identifying step, not broad merits discovery.**

Plaintiff also objects to the denial of the Renewed Motion for Leave to Issue Narrow Follow-Up Subpoena to AT&T, ECF No. 109.

The Court previously authorized early discovery to identify unknown defendants. Plaintiff sought a narrow follow-up subpoena because AT&T's prior response did not identify the individual user associated with IP address 207.104.41.106. Plaintiff therefore sought the next necessary identifying step: identifying the customer, account, enterprise customer, institution, reseller, downstream provider, business customer, or smallest netblock assignee to whom the IP address was assigned at the relevant times.

At the hearing, Plaintiff explained that the original subpoena focused on individuals, but the follow-up request sought whether any institution, company, or other entity was assigned the IP address so Plaintiff could subpoena that entity for the needed information. Hr'g Tr. 12:09–12:59.

Identifying an IP-address assignee is part of identifying a Doe defendant, not broad merits discovery. An IP address is not always assigned directly to a natural person. It may be assigned to a university, institution, enterprise account, reseller, downstream provider, corporate customer, or other network assignee. In those circumstances, identifying that assignee is the necessary first step in identifying the individual user connected to the IP address.

**F. The AT&T follow-up subpoena remained within the Court's authorized identifying-discovery scope.**

The AT&T follow-up subpoena sought only non-content identifying and assignment information for one IP address at specific relevant times. If the address was assigned to an entity, institution, reseller, downstream provider, or smallest netblock assignee, that assignee's contact information is necessary to identify the next subpoena target and ultimately the Doe defendant.

**G. The age of the case supports corrective discovery rather than denial.**

11

The age of the case and difficulty identifying defendants should not have been used to deny narrowly tailored Doe-identification discovery. Those facts show why such discovery is necessary. The defendants are anonymous, the alleged fraud involves cryptocurrency, and the practical path to identification may require exchange attribution records, IP-assignment records, and sequenced third-party subpoenas. The passage of time also reflects the ordinary time required for motions, rulings, subpoena authorization, third-party responses, service disputes, and Court consideration of Plaintiff's requests; it should not be used to penalize Plaintiff for pursuing the very Doe-identification process the Court previously authorized.

## H. The ruling should have provided a corrective path rather than outright denial.

Even if the Court had concerns about service, enforceability, Rule 45, Hague Convention issues, ADGM/UAE process, possession/control, or IP-assignment complexity, outright denial was not the only available remedy.

The Court could have allowed Plaintiff to correct service, required preservation, required BHL to identify the proper Binance-related entity and legal process, required a sworn declaration, allowed limited service-related discovery, authorized a narrower AT&T follow-up subpoena for the IP-address assignee, or denied without prejudice with specific instructions for cure.

## I. The ruling prejudiced Plaintiff.

Plaintiff was prejudiced because he relied on the Court's alternative-service authorization. If the Court later concluded that service was insufficient, Plaintiff was denied enforcement without a clear explanation of why the authorized method was inadequate and without leave to cure.

12

Plaintiff was also prejudiced because BHL's private, unsworn letter was treated as the basis for denying relief even though BHL filed no motion to quash, protective-order motion, docketed response, motion to reconsider, or sworn declaration. Plaintiff therefore had no filed motion or sworn factual record to address regarding service, possession, custody, control, ADGM entities, or foreign legal process.

Plaintiff was also prejudiced by denial of the AT&T follow-up subpoena. Delay risks loss or expiration of identifying records, including exchange records, account records, IP assignment logs, access logs, DHCP logs, NAT logs, and other identifying information.

**J. Legal authorities confirm that modification or a corrective path is required.**

Rule 72(a) permits the District Judge to modify or set aside any portion of a magistrate judge's nondispositive order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); Ocelot Oil Corp. v. Sparrow Industries, 847 F.2d 1458, 1464 (10th Cir. 1988). Doe-identification discovery is appropriate where a plaintiff cannot otherwise identify unknown defendants and the requested discovery is limited to information needed for service and identification. See 20/20 Financial Consulting, Inc. v. Does 1-5, No. 10-cv-01006-CMA-KMT, 2010 WL 1904530, at *1 (D. Colo. May 11, 2010); Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 174.51.234.104, No. 13-cv-00307-WYD-MEH, 2013 WL 3753436, at *4 (D. Colo. July 14, 2013).

Rule 45 provides the framework for resolving subpoena objections. Fed. R. Civ. P. 45(d)(2)(B)(i), (e)(2)(A). Where a discovery dispute turns on possession, custody, or control, courts look to the legal right or practical ability to obtain the records rather than accepting a conclusory assertion that another related entity holds them. See Argo v. Blue Cross & Blue

13

Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Ice Corp. v. Hamilton Sundstrand

Corp., 245 F.R.D. 513, 516–17 (D. Kan. 2007).

Those authorities do not require immediate compulsion in every case, but they do require

a reviewable process: proper motion practice, sworn evidence where factual assertions are

dispositive, and a tailored remedy where service, foreign-process, or control issues may be cured.

## V. REQUESTED RELIEF

Plaintiff requests that the District Judge sustain this Rule 72(a) objection and modify or set

aside ECF No. 131. Specifically, Plaintiff requests that the District Judge:

1.  set aside the denial of Plaintiff's Motion to Compel BHL / Binance.com, ECF No. 100, and

    Renewed Motion for Leave to Issue a Narrow AT&T Follow-Up Subpoena, ECF No. 109;

2.  grant the motion to compel BHL / Binance.com or remand with instructions to apply the

    Court's prior alternative-service authorization, Rule 45 procedures, and an appropriate

    corrective path;

3.  order BHL / Binance.com to preserve all responsive identifying records and permit service

    through BHL's U.S. counsel and the email channels previously used for Court-authorized

    service;

4.  if immediate compulsion is not ordered, require BHL to file a sworn declaration addressing

    who has the records; BHL's relationship to Binance.com and the ADGM/Nest entities;

    BHL's legal, contractual, corporate, operational, or practical ability to obtain or preserve the

    records; the legal process BHL contends is required; and whether the records will be

    preserved;

5.  alternatively, require BHL or its counsel to provide legal-service emails, registered addresses,

    legal-process portal information, and custodian identification for Nest Exchange Limited,

Nest Clearing and Custody Limited, and Nest Trading Limited, and grant Plaintiff leave to cure any service defect;

6. grant Plaintiff leave to issue a narrow AT&T follow-up subpoena for non-content identifying and assignment information for IP address 207.104.41.106, including the customer, enterprise account, institution, reseller, downstream provider, business customer, or smallest netblock assignee assigned that IP address at the relevant times; and

7. grant any other relief the Court deems just and proper.

Dated: July 20, 2026

Respectfully submitted,

/s/ Y.S.

Y.S.

Plaintiff, pro se

15

**CERTIFICATE OF SERVICE**

I certify that on July 20, 2026, I submitted the foregoing Plaintiff's Objection Under Fed. R. Civ. P. 72(a) to Magistrate Judge's Order Denying Plaintiff's Motion to Compel Binance Holdings Limited / Binance.com and Renewed Motion for Leave to Issue Narrow Follow-Up Subpoena to AT&T to the Clerk of the United States District Court for the District of Colorado for filing.

I further certify that, upon docketing, service will be completed through the Court's CM/ECF filing and service procedures on all registered parties, or by any additional method directed by the Clerk.

/s/ Y.S.

Y.S.

Plaintiff, pro se

16