FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*4:23 pm, Jul 23, 2026*
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03129-DDD-KAS

Y.S.,
Plaintiff,

v.

JOHN DOE, et al.,
Defendants.

---

**PLAINTIFF'S RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, EXPEDITED DISCOVERY,
PRESERVATION ORDER, INTERNAL ACCOUNT-LEVEL TRACING, AND
ALTERNATIVE SERVICE**

---

## I. INTRODUCTION

Plaintiff Y.S., proceeding pro se, alleges that anonymous online fraud actors induced him through a cryptocurrency investment scam to transfer approximately $100,000 in Bitcoin from his verified Coinbase account to wallet addresses controlled or used by the wrongdoers. The wrongdoers used pseudonymous identities, online platforms, cryptocurrency wallets, exchange-facing infrastructure, and successive transfers to conceal their identities and frustrate recovery.

The facts are consistent with a pig-butchering cryptocurrency investment scam in which wrongdoers build trust, create the appearance of legitimate investment activity, induce repeated cryptocurrency transfers, prevent withdrawals, and then move or launder the proceeds through multiple wallets and exchanges. This renewed motion is based on new blockchain evidence submitted in three exhibits. The exhibits concern Plaintiff's September 2, September 8, and September 18, 2025 Bitcoin transfers and, for the first time, document continuous and reproducible transaction-graph paths beginning with Plaintiff's specific Coinbase source outputs,

1

passing through the common scam receiving wallet and identifiable intermediate transactions, and ultimately reaching the same Binance-associated endpoint.

The new exhibits provide reproducible transaction records and concrete markers that Binance can use to identify the account or accounts credited with the terminal transactions, the corresponding internal ledger activity, conversions, withdrawals, linked accounts, and any remaining cryptocurrency, fiat currency, ledger credits, substituted assets, or identifiable proceeds. Public blockchain data does not establish whether Binance 4 is a customer-specific address, an omnibus custodial wallet, or another exchange-controlled address. Binance's internal records are therefore necessary to determine the address's custodial structure, customer-level attribution, and the present disposition of the associated value.

Plaintiff proceeds under an equitable-property theory. He seeks preservation of specific property allegedly obtained through fraud and its traceable substitutions and proceeds through constructive trust, equitable lien, restitution of specific property, and related equitable remedies. He does not seek a prejudgment attachment of Binance's general assets, an arbitrary portion of an exchange wallet, assets beneficially owned by unrelated customers, or security for an unsecured damages judgment.

The Magistrate Judge has already authorized early discovery from Binance.com and Binance Holdings Limited and alternative service on Binance Holdings Limited. (ECF No. 83.) Plaintiff now seeks emergency preservation, expedited discovery, internal account-level tracing, and a temporary restraint of $100,000 in cryptocurrency, fiat currency, internal ledger credits, converted proceeds, substituted assets, or other value associated with the Binance-facing transactions identified in the exhibits and held for the benefit of the account holder or holders credited with those transactions. The restraint should not depend on prior identification of the

Doe Defendants by name or proof that Plaintiff's identical satoshis remain segregated. Binance can use the identified terminal transactions and its internal records to determine where the corresponding beneficial interest was credited and presently remains.

## II. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts federal claims arising from the cryptocurrency-fraud scheme, and supplemental jurisdiction under 28 U.S.C. § 1367 over related state-law claims arising from the same nucleus of operative facts. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred here, including Plaintiff's receipt of fraudulent communications, reliance on fraudulent investment representations, transfers from Plaintiff's Coinbase account, and resulting injury.

## III. CERTIFICATION UNDER RULE 65(b)(1)(B)

Plaintiff certifies under Rule 65(b)(1)(B) that notice should not be required before entry of an ex parte temporary restraining order because advance notice to the unknown wrongdoers would likely result in immediate dissipation, transfer, conversion, concealment, withdrawal, or destruction of traceable cryptocurrency assets and related records. Plaintiff cannot identify the wrongdoers' true names, locations, or reliable service addresses because they used pseudonymous identities, fraudulent communications, cryptocurrency wallets, layered transfers, and exchange-linked infrastructure to conceal themselves.

Plaintiff has not provided advance notice to the Doe Defendants because their identities, physical locations, and reliable service addresses remain unknown despite Plaintiff's investigation and authorized third-party discovery.

3

Cryptocurrency can be moved, swapped, bridged, withdrawn, converted, or routed to non-compliant exchanges or self-custodied wallets within minutes. In a closely analogous cryptocurrency-fraud action, the court granted an ex parte temporary restraining order, authorized expedited discovery, and permitted alternative electronic service after tracing identified exchange deposit addresses. *Northfield LLC v. Onchainweb3*, No. 1:26-cv-00092-MJT, Dkt. 3 at 1-10 (E.D. Tex. Mar. 12, 2026) (Order Granting Plaintiff's Motion for Emergency Ex Parte Temporary Restraining Order and Order Authorizing Expedited Discovery). The Northfield court found that notice was unnecessary because it would likely prompt the unknown defendants to conceal or dissipate the allegedly stolen cryptocurrency and thereby frustrate effective final relief. Id. at 3-4. The requested ex parte relief here is likewise temporary, preservation-focused, and directed to identifiable transaction markers while records and traceable account-level balances remain available.

## IV. NEW EVIDENCE, CHANGED CIRCUMSTANCES, AND NEW PERSUASIVE AUTHORITY

The three attached exhibits constitute new blockchain evidence that was not before the Court when it considered Plaintiff's earlier requests for emergency relief. The exhibits concern Plaintiff's September 2, September 8, and September 18, 2025 Bitcoin transfers and document reproducible transaction-graph paths beginning with Plaintiff's specific Coinbase source outputs, passing through the common scam receiving wallet and intermediate transactions, and ultimately reaching the same Binance-associated endpoint.

## A. Summary of the Three Tracing Exhibits

Each exhibit begins with the specific Coinbase source output corresponding to one of Plaintiff's Bitcoin transfers and traces qualifying downstream routes through the common scam receiving address:

bc1qrcym0w5ce7a079mtd59jwh4ypp5jfek2qajz43.

The three source outpoints are:

September 2, 2025: 63215045...a62932:16 — 0.20986406 BTC;

September 8, 2025: 73f2a03a...a33fe1:1 — 0.25164318 BTC; and

September 18, 2025: b9be3833...ce94ff:24 — 0.42057942 BTC.

The qualifying routes proceed through recurring intermediate addresses and ultimately terminate at: bc1qm34lsc65zpw79lxes69zkqmk6ee3ewf0j77s3h, the address publicly labeled Binance 4.

The path counts represent distinct graph routes, not necessarily independent transfers, because some routes share segments, diverge briefly, or later reconverge. Their significance is that three separate Coinbase source outputs corresponding to Plaintiff's transfers connect through identifiable intermediate transactions to the same Binance-facing endpoint. The analyses do not establish that every intermediate wallet had common ownership or that identical satoshis remained segregated after commingling.

The exhibits provide transaction hashes, outpoints, timestamps, amounts, terminal transactions, and other concrete markers that Binance can use to identify the credited customer account or accounts, internal ledger entries, conversions, transfers, withdrawals, linked accounts, and any remaining associated property or proceeds. Because public-chain data cannot reveal Binance's internal deposit mappings or beneficial ownership records, internal account-level review is necessary.

The exhibits also materially narrow the requested relief. Plaintiff seeks preservation and restraint of $100,000 in property or value associated with the identified Binance-facing transactions, whether represented by Bitcoin, other cryptocurrency, fiat currency, internal ledger credits, converted proceeds, substituted assets, or successor-account balances held for the account holder or holders credited with those transactions. Plaintiff does not seek restraint of Binance's proprietary assets, unrelated customer assets, or the entirety of Binance 4 merely because the traced transactions reached that address.

In addition to the new evidence and narrowed equitable-property relief, a federal district court has issued a recent decision granting materially similar emergency relief in a cryptocurrency-fraud action. In *Northfield LLC v. Onchainweb3*, No. 1:26-cv-00092-MJT, Dkt. 3 (E.D. Tex. Mar. 12, 2026), the court granted an ex parte temporary restraining order, froze accounts associated with specifically identified deposit addresses, authorized expedited discovery directed to Binance and other service providers, permitted follow-on discovery, authorized alternative electronic service, and imposed no bond.

Northfield is persuasive rather than controlling authority. It is new, closely analogous authority issued after the Court considered Plaintiff's earlier emergency requests. It demonstrates that narrowly tailored preservation and account restraints may be available under Rule 65 when specific tracing evidence identifies exchange-facing destinations and the record shows a substantial risk of rapid dissipation, concealment, conversion, or withdrawal.

The Northfield court acted while the defendants' identities remained unknown and without making an express finding that the victim's exact cryptocurrency remained segregated at the receiving addresses. It found that advance notice could prompt concealment or dissipation

6

and that maintaining assets temporarily at the destination accounts imposed substantially less harm than allowing the assets to be transferred beyond recovery.

Plaintiff does not contend that Northfield requires this Court to grant relief or that it authorizes restraint of unrelated assets. Rather, it supplies recent persuasive support for temporary preservation, expedited discovery, alternative service, and a transaction-specific restraint directed to identified property, proceeds, or beneficial interests while internal attribution is completed.

This renewed motion does not merely repeat Plaintiff's earlier request on the same record. The prior record did not contain the three source-outpoint-specific analyses now submitted, did not document qualifying graph routes from each of Plaintiff's three Coinbase outputs to concrete Binance-facing terminal transactions, and did not present the current equitable-property implementation mechanism tied to Binance's internal deposit and ledger records.

The basis for renewed consideration rests on the combined effect of new blockchain evidence connecting three specific Coinbase source outputs to the common scam receiving wallet and then to identifiable Binance-facing transactions; a materially narrower request directed to specific property, traceable proceeds, substituted value, and the receiving account holder's beneficial interest; the continued risk of transfer or conversion; and recent persuasive authority granting comparable preservation relief.

Because the Court's prior rulings on emergency relief were interlocutory, the Court retains authority under Rule 54(b) to revise them before entry of final judgment when later evidence or materially changed circumstances alter the record.

7

**B. The Repeated Multi-Stage Routing Pattern Supports an Inference of Deliberate Layering and Demonstrates the Need for Immediate Preservation**

The tracing evidence shows more than a technical connection between Plaintiff's Coinbase outputs and the Binance-associated endpoint. It reveals a repeated pattern of multi-stage routing, consolidation, division, and reconvergence before the associated value reached Binance 4. Rather than moving through a direct transfer or short sequence ordinarily associated with an isolated payment, Plaintiff's three transfers entered recurring downstream transaction chains containing intermediate stages and ultimately converged upon the same exchange-facing destination.

For example, the September 2 and September 18 analyses show the transferred value moving through recurring addresses including 3BHLecAFJDH9GGReyVhNKWPwVrEFZ1ozPf, 3CBNMUvtzr8mdgdgDwcJiS85r53bEC8be2, 3FHANNnS7XqcfQK71QkvpN9ATQEDzrdQk3, and 3CTsksRTRmg4Toys1vWrUULYg5ebJ7dse8, followed by additional consolidation and division transactions before reaching the Binance-associated address. The reported routes contain between thirteen and twenty transfer stages, with numerous routes terminating in concrete Binance-facing transactions during January 2026.

The Court need not determine at this preliminary stage that every intermediate address was controlled by the same person or that every transaction had an illicit purpose. Nor does Plaintiff contend that the number of reported graph routes equals the number of independent transfers. The recurring sequence, however, is probative. Three separately transferred Coinbase outputs entered the same receiving address, traveled through recurring downstream infrastructure, underwent repeated consolidation and redistribution, and ultimately reached the

8

same Binance-associated endpoint. That repeated convergence is less consistent with accidental or unrelated blockchain contact than with coordinated handling of the proceeds.

The multi-stage movement also bears directly on concealment and irreparable harm. Each additional consolidation, division, and transfer increased commingling, separated the proceeds from their original source amounts, and made public-chain attribution more difficult. The pattern therefore demonstrates not merely a theoretical ability to dissipate cryptocurrency, but an actual history of moving the associated value through successive stages before placing it into an exchange-facing custodial environment. Without immediate preservation and internal account-level tracing, the credited customer may further convert, internally transfer, withdraw, or substitute the associated value, leaving the public blockchain unable to reveal its subsequent disposition.

At the same time, the multi-stage routing does not defeat Plaintiff's equitable-property claim. The paths preserve a continuous, reproducible transaction-graph connection from Plaintiff's exact source outpoints to concrete Binance-facing transactions. The repeated commingling makes Binance's internal records more—not less—important because Binance alone can determine which customer account received the terminal credits, whether the credited value was converted or transferred internally, and whether corresponding cryptocurrency, fiat currency, ledger credits, or substituted assets remain under its control.

Accordingly, the transfer pattern supports narrowly tailored relief directed not to the entire Binance 4 wallet, but to the customer account or accounts internally associated with the identified terminal transactions and to any remaining property, proceeds, substitutions, or beneficial interests attributable to those credits.

## V. LEGAL STANDARD

A temporary restraining order and preliminary injunction may issue where the movant shows: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent relief; (3) that the balance of equities favors relief; and (4) that the injunction is in the public interest. Rule 65(b) permits a temporary restraining order without notice if specific facts clearly show that immediate and irreparable injury will result before the adverse party can be heard and the movant certifies why notice should not be required. Because TRO denials are interlocutory emergency-relief rulings, Rule 54(b) and the Court's inherent authority permit renewed emergency relief when later facts, newly connected evidence, or changed circumstances materially alter the record before final judgment.

## VI. ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits

Plaintiff is likely to succeed because the evidence shows that Defendants induced him to transfer cryptocurrency through fraudulent investment representations, took control of the transferred property, refused to return it, and moved the value through downstream wallets. Plaintiff asserts claims including fraud, conversion, unjust enrichment, restitution, constructive trust, equitable lien, and related equitable relief.

The evidence supports the essential elements of those claims. The wrongdoers represented that Plaintiff's transfers would be credited to and invested through a legitimate cryptocurrency platform. Those representations were false, were made to induce reliance, and caused Plaintiff to transfer three specific Bitcoin amounts from his verified Coinbase account. The wrongdoers then denied Plaintiff access to the represented investment, failed to return the Bitcoin, and transferred or converted the value through downstream wallets. These facts support

10

fraud and conversion claims and an equitable claim to the transferred property, its identifiable substitutions, and traceable proceeds.

The tracing exhibits corroborate, rather than replace, the evidence of the original transfers and fraudulent inducement. Each analysis begins with the exact Coinbase output corresponding to Plaintiff's transfer, follows recorded downstream transactions from the common scam receiving address, and identifies concrete Binance-facing terminal transactions. Exhibit 1 begins with Plaintiff's September 2 VOUT 16, Exhibit 2 begins with Plaintiff's September 8 VOUT 1, and Exhibit 3 begins with Plaintiff's September 18 VOUT 24.

Although commingling prevents proof that identical satoshis remained segregated, the exhibits provide transaction-specific evidence that proceeds entered identifiable downstream chains and furnish Binance with concrete markers necessary to determine customer-level attribution. Plaintiff relies on the paths as evidence of reproducible graph connectivity and as a basis for preservation and internal review, not as proof that every route represented an independent transfer, every intermediate wallet had common ownership, or identical satoshis remained intact.

The recurrence of substantially the same downstream addresses and the ultimate convergence of three separate source outputs upon the same Binance-associated endpoint provide circumstantial corroboration that the transfers were not isolated or accidental events but were handled through a common or coordinated downstream transaction structure.

## B. Constructive Trust, Equitable Lien, Restitution, and Narrow Preservation Are Proper

Plaintiff seeks preservation of a specific equitable res: the Bitcoin allegedly obtained through fraud and its identifiable substitutions and traceable proceeds. The requested res may be represented by the original cryptocurrency, other cryptocurrency acquired with it, fiat currency

11

credited upon conversion, internal exchange-ledger credits, substituted assets, successor-account balances, or the receiving account holder's beneficial interest in a commingled custodial environment. Courts recognize constructive trusts, equitable liens, and restitution where property obtained by fraud can be identified or traced. See *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289 (1940); *Paoloni v. Goldstein*, 331 F. Supp. 2d 1310, 1320 (D. Colo. 2004); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210–11 (10th Cir. 2009).

This request is not a general asset freeze barred by Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). Plaintiff does not ask the Court to reserve unrelated assets merely equal to a damages demand. He seeks to preserve specific property allegedly belonging in equity to him, together with property into which it was converted and identifiable proceeds or beneficial interests derived from it. Courts have granted asset-preservation TROs in similar cryptocurrency-fraud cases. See, e.g., *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024); *Jacobo v. Doe*, No. 1:22-CV-00672, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022); *Gaponyuk v. Alferov*, No. 2:23-cv-01317, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023).

Northfield provides a particularly close judicial analogy. There, the court entered an emergency ex parte TRO freezing accounts associated with specifically identified deposit addresses and restrained the withdrawal, transfer, or encumbrance of assets held by, for, or on behalf of the persons controlling those accounts. The court acted while the defendants' identities remained unknown, authorized expedited subpoenas to Binance and other third parties, permitted follow-on subpoenas, authorized alternative electronic service, and required no bond.

The court found that the instantaneous and opaque nature of cryptocurrency transactions, together with the defendants' concealment, created a substantial threat that assets would be

transferred beyond recovery. It further found that the balance of harms favored a temporary restraint because maintaining assets at the destination accounts preserved the plaintiff's opportunity for recovery while imposing only a temporary limitation on transfer. Plaintiff seeks comparable preservation, but expressly limits the requested restraint to property, proceeds, or beneficial interests associated with the transactions identified in Exhibits 1, 2, and 3.

**C. Commingling and the Unknown Custodial Structure Require Internal Account-Level Tracing**

Exhibits 1, 2, and 3 identify three precise Coinbase source outputs, reproducible downstream transaction routes, and concrete Binance-facing terminal transactions. Those markers enable Binance to search its deposit mappings, customer-account credits, internal ledgers, conversion records, withdrawals, linked accounts, successor accounts, and remaining balances.

Public blockchain data does not establish whether Binance 4 is a customer-specific address, an omnibus custodial wallet, or another exchange-controlled address associated with one or more customer accounts. If Binance 4 is customer-specific, the restraint may be implemented against property held in or for the associated account. If Binance 4 is omnibus or exchange-controlled, Binance can use its internal records to identify the account holder or holders credited with the terminal transactions and the corresponding beneficial interest, ledger credit, converted proceeds, substituted assets, or successor-account value.

Commingling prevents one-for-one identification of Plaintiff's original satoshis through public-chain data alone, but it does not eliminate the recorded transaction-graph connections or necessarily defeat an equitable-property claim. Pending Binance's internal review, the Court should order preservation of the relevant records and restrain $100,000 in cryptocurrency, fiat

currency, ledger credits, converted proceeds, substituted assets, or other value associated with the identified terminal transactions and held for the benefit of the credited account holder or holders. The restraint should not depend on prior identification of the Doe Defendants by name or conclusive proof of ownership.

Nothing in the requested relief requires Binance to restrain its proprietary assets, assets beneficially owned by unrelated customers, or an arbitrary portion of Binance 4. Plaintiff relies only on the tracing and transaction markers contained in Exhibits 1, 2, and 3, together with Binance's internal records, to identify the property or beneficial interest subject to preservation.

**D. The Requested Restraint Is Transaction-Specific, Equitable, and Status-Quo-Preserving**

Plaintiff requests an immediate temporary restraint of $100,000 in Bitcoin, other cryptocurrency, fiat currency, internal ledger credits, converted proceeds, substituted assets, successor-account balances, or other value associated with the Binance-facing transactions identified in Exhibits 1, 2, and 3 and held for the benefit of the account holder or holders credited with those transactions.

The relevant Binance-associated address is bc1qm34lsc65zpw79lxes69zkqmk6ee3ewf0j77s3h, publicly labeled Binance 4.

The $100,000 amount represents the amount of Plaintiff's equitable-property claim and the value of the property and proceeds he alleges were obtained through fraud. It is not an estimate of Binance 4's current balance, a request to freeze Binance's general assets, or an instruction to select an arbitrary $100,000 from an exchange-controlled wallet. The full amount should be restrained if Binance's internal records identify at least $100,000 in associated property, proceeds, or beneficial interests. If Binance identifies less than $100,000 presently held or controlled for the credited account holder or holders, Binance should restrain all such

14

available associated property and promptly disclose, to the extent shown by its records, the conversion, transfer, withdrawal, internal movement, or other disposition of the remaining associated value.

In Northfield, the court froze accounts associated with specifically identified cryptocurrency deposit addresses without first requiring identification of the Doe Defendants or an express showing that the victim's exact cryptocurrency remained segregated at those addresses. Similarly, Plaintiff's inability to demonstrate exact-satoshi continuity after commingling should not defeat temporary relief. The terminal transactions identified in the exhibits provide concrete markers from which Binance can locate the relevant deposit credits, internal ledger entries, or customer-level beneficial interests.

If Binance 4 is customer-specific, the restraint should apply to the cryptocurrency and other assets held in or for that account. If Binance 4 is omnibus or otherwise exchange-controlled, Binance should use its internal deposit mappings, customer-account records, and ledgers to determine where the value associated with the identified terminal transactions was credited and whether it was converted, transferred internally, withdrawn, or credited to another account.

The requested restraint follows the property into identifiable substitutions and proceeds. It therefore applies only to cryptocurrency, fiat currency, account credits, or substitute assets associated with the identified transactions and held for the relevant account holder or holders. It does not extend to Binance's proprietary property, unrelated customer property, or unrelated assets of a Doe Defendant merely because those assets could satisfy a future judgment.

The restraint is principally prohibitory because it prevents withdrawal, transfer, conversion, encumbrance, concealment, or dissipation of the disputed property. It does not

15

require Binance to transfer assets to Plaintiff, determine final ownership, unwind completed transactions, or admit liability. To the extent implementation requires limited affirmative account-level identification, that action is transaction-specific, Binance alone possesses the necessary mappings, and delay creates a substantial risk of irreversible dissipation.

The evidence provides more than a public-explorer label standing alone. Exhibit 1 supplies source-outpoint-specific paths beginning with Plaintiff's September 2 VOUT 16. Exhibit 2 supplies forty distinct qualifying routes beginning with Plaintiff's September 8 VOUT 1. Exhibit 3 supplies twelve qualifying routes beginning with Plaintiff's September 18 VOUT 24. Although some routes overlap or reconverge, their significance lies in reproducible connectivity from three separate Plaintiff source outputs to concrete transactions involving the same Binance-associated address.

Plaintiff requests entry of an order restraining the Doe Defendants and all persons or entities bound under Rule 65(d)(2) who receive actual notice from withdrawing, transferring, converting, encumbering, concealing, or dissipating the associated property. To the extent Binance holds or controls that property for a Doe Defendant and is bound under Rule 65(d)(2), Plaintiff requests that Binance implement the restraint after receiving actual notice. Plaintiff separately requests preservation and expedited production from Binance under the Court-authorized discovery process.

The proposed order should identify Binance 4, the terminal transactions listed in Exhibits 1, 2, and 3, the $100,000 equitable-property claim, the property categories subject to restraint, and the persons or entities bound under Rule 65(d)(2). If the Court declines to impose an immediate restraint on the present record, Plaintiff alternatively requests immediate preservation and expedited production sufficient to identify the associated accounts, beneficial interests,

16

custody or control, and present location of the property so that the Court may promptly determine the proper restraint.

**E. Plaintiff Faces Irreparable Harm Absent Immediate Relief**

Cryptocurrency can be transferred, swapped, bridged, converted, withdrawn, or moved to self-custody within minutes. Exhibits 1, 2, and 3 show reproducible paths from Plaintiff's exact September 2, September 8, and September 18 source outpoints to Binance 4. The convergence of three separate Plaintiff source transfers on the same Binance-associated endpoint demonstrates a concrete risk that the related property, proceeds, or account-level value may be moved before ordinary discovery is completed.

Courts have recognized the same emergency-preservation concern in cryptocurrency-fraud cases. See, e.g., *Ohlin v. Defendant 1*, No. 3:23-C-8856, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023); *Jacobo*, 2022 WL 2052637, at *3; *Astrove v. Doe*, No. 1:22-CV-80614, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022). Those authorities support relief directed to specifically traced property, substitutions, proceeds, and beneficial interests before they can be transferred beyond effective recovery.

Northfield also confirms that expedited custodian discovery is appropriate where public-chain evidence identifies exchange-facing destinations but cannot reveal the persons, accounts, or internal credits behind them. Plaintiff seeks the same type of targeted attribution for the terminal transactions and markers identified in Exhibits 1, 2, and 3.

The threatened loss of internal records is independently irreparable. KYC files, account-opening records, deposit-address mappings, internal ledger credits, conversion and trade histories, withdrawal approvals, IP logs, device identifiers, login history, compliance notes, fraud reports, and linked-account data may be the only evidence connecting a public-chain transaction

17

to a real person and to the corresponding beneficial interest. Public blockchain history cannot recreate Binance's private attribution after records are lost, accounts are closed, or assets are transferred beyond Binance's control.

The risk of dissipation is demonstrated by completed conduct, not merely by cryptocurrency's abstract transferability. The exhibits show that the associated value was repeatedly moved, consolidated, divided, and reconverged over paths containing thirteen to twenty transaction stages before reaching Binance-facing transactions. This established history of successive movement shows both the willingness and practical ability of the persons handling the proceeds to place additional distance between Plaintiff's source outputs and the property's present form. Absent immediate preservation, the same pattern may continue through internal exchange transfers, conversion, withdrawal, or further off-chain movement that public blockchain analysis cannot observe.

## F. The Balance of Equities, Public Interest, Bond, Discovery, and Service Favor Relief

The equities and public interest favor targeted preservation of allegedly stolen property, traceable proceeds, substituted value, account-level beneficial interests, internal records, and the blockchain markers identified in Exhibits 1, 2, and 3. The requested restraint is limited to $100,000 in associated property or value and expressly excludes Binance's proprietary assets, unrelated customer assets, and unrelated assets of a Doe Defendant.

Courts have found that the balance of equities favors cryptocurrency-preservation relief where alleged wrongdoers face only temporary inconvenience from an asset restraint, while the plaintiff faces severe prejudice if the property is transferred beyond the court's reach. See, e.g., *Licht v. Ling*, No. 3:23-CV-1018, 2023 WL 4504585, at *3 (N.D. Tex. June 20, 2023); *Jacobo*,

18

2022 WL 2052637, at *6. Here, the restraint is temporary, reversible, and confined to property, proceeds, substitutions, or beneficial interests associated with identified transactions.

Plaintiff requests no bond or only nominal security under Rule 65(c) because he seeks temporary preservation of specific property and traceable proceeds, not a general freeze. Northfield imposed no bond after freezing accounts associated with identified receiving addresses.

Good cause exists for expedited discovery because public-chain tools cannot determine whether Binance 4 is customer-specific or omnibus and cannot identify KYC records, deposit mappings, internal ledger credits, conversions, withdrawals, linked accounts, successor accounts, remaining balances, or beneficial ownership associated with the markers in Exhibits 1, 2, and 3.

Plaintiff recognizes that Binance is not presently a named defendant. Accordingly, the requested injunction is directed to the Doe Defendants and those persons or entities bound under Rule 65(d)(2) who receive actual notice. Plaintiff does not contend that actual notice alone binds every nonparty. Separately, Plaintiff requests expedited preservation and production from Binance under the discovery authority already granted by the Court.

Electronic service is appropriate because the requested relief concerns digital assets that can be transferred rapidly. The Magistrate Judge has already authorized alternative service on Binance Holdings Limited. (ECF No. 83.) Consistent with that authorization, Plaintiff requests service by email directly on BHL and through counsel who has communicated or acted for BHL concerning subpoenas or proceedings in this action. Those channels have demonstrated reliable receipt and response.

## VII. REQUESTED RELIEF

Plaintiff respectfully requests entry of an order:

19

1. restraining the Doe Defendants and all persons or entities bound under Rule 65(d)(2) who receive actual notice from withdrawing, transferring, converting, encumbering, concealing, or dissipating $100,000 in Bitcoin, other cryptocurrency, fiat currency, internal ledger credits, converted proceeds, substituted assets, successor-account balances, or other value associated with the Binance-facing transactions identified in Exhibits 1, 2, and 3;

2. requiring preservation of all records and property associated with the transactions identified in Exhibits 1, 2, and 3 by persons or entities subject to the order or to the Court-authorized discovery;

3. authorizing expedited discovery directing Binance, pursuant to properly issued discovery process, to use the identified source outpoints, intermediate transactions, timestamps, terminal transactions, and Binance-facing markers to determine whether Binance 4 is customer-specific, omnibus, or otherwise exchange-controlled, and to identify the corresponding deposit credits, ledger entries, customer accounts, converted proceeds, substituted assets, successor accounts, or other internal records associated with the traced transactions;

4. directing that, if Binance 4 is customer-specific, the restraint apply to property held in or for the associated account, and that, if Binance 4 is omnibus or exchange-controlled, Binance use its internal records to identify the corresponding customer-level property, proceeds, or beneficial interest associated with the identified terminal transactions and implement the restraint to the extent Binance is bound under Rule 65(d)(2) or otherwise directed by the Court;

5. directing that the full $100,000 be restrained if Binance identifies at least that amount in associated property or value and, if less than $100,000 is presently held or controlled for the credited account holder or holders, directing restraint of all available associated property and expedited disclosure, to the extent shown by Binance's records, of the conversion, transfer, withdrawal, internal movement, or other disposition of the remaining associated value;

6. clarifying that nothing in the order requires restraint of Binance's proprietary assets, assets beneficially owned by unrelated customers, the entirety of Binance 4, or unrelated assets of a Doe Defendant;

7. permitting alternative electronic service consistent with the Court's prior order;

8. maintaining any ex parte restraint only for the period authorized by Rule 65(b), subject to a prompt hearing at which Binance, an affected account holder, or another person claiming an interest may seek modification or dissolution;

9. authorizing expedited discovery requiring that, if Binance cannot determine the property's present location or disposition, attribute the terminal transactions to a customer account, or determine whether Binance or any Binance-affiliated entity controlled or maintained records for the address publicly labeled Binance 4, Binance provide through properly issued discovery a custodian declaration stating: (a) whether each identified terminal transaction and output was located; (b) the relationship, if any, between Binance or a Binance-affiliated entity and Binance 4; (c) the databases, wallet-mapping systems, ledger records, transaction identifiers, entities, and date ranges searched; (d) whether any customer account, subaccount, deposit address, ledger credit, conversion, transfer, withdrawal, or successor account was associated with the identified transactions; (e)

whether another Binance entity, affiliate, custodian, or service provider possesses responsive records; and (f) the factual basis for any conclusion that no responsive account, property, proceeds, or records can be identified; and

10. authorizing expedited discovery requiring that, if Binance identifies the account holder or holders associated with the terminal transactions but determines that no related property remains under its custody or control, Binance preserve and produce, pursuant to properly issued discovery process, the account-attribution records, KYC information, ledger history, conversions, internal transfers, withdrawals, destination addresses, linked accounts, and other records necessary to trace the subsequent disposition of the associated value.

The requested $100,000 restraint is limited to Plaintiff's equitable-property claim: property, identifiable substitutions, traceable proceeds, or beneficial interests associated with the identified Binance-facing transactions. It does not reach unrelated assets or depend on identification of the Doe Defendants or segregation of identical satoshis.

If the present record is insufficient for an immediate restraint, Plaintiff alternatively requests preservation and expedited production identifying the accounts, beneficial ownership, custody or control, traceable proceeds, and present location of the associated value.

## VIII. CONCLUSION

The analyses materially alter the record. Exhibits 1, 2, and 3 identify reproducible transaction-graph paths from Plaintiff's September 2, September 8, and September 18 Coinbase source outpoints to Binance 4 and report twenty-two, forty, and twelve distinct graph routes within the documented search parameters, respectively.

Further transfers may defeat identification and recovery. Plaintiff therefore requests restraint of up to $100,000 in cryptocurrency, fiat currency, ledger credits, converted proceeds, substituted assets, successor-account balances, or value associated with the identified Binance-facing transactions and held for the credited account holder or holders.

The relief rests on constructive trust, equitable lien, restitution, and recovery of traceable proceeds. It excludes Binance's proprietary assets, unrelated customer property, the entirety of Binance 4, and unrelated property merely to secure a future damages judgment. Identifiable associated property should be restrained up to $100,000; if less than that amount remains, all available associated property should be preserved, and Binance should disclose through properly issued discovery any conversion, transfer, withdrawal, internal movement, or other disposition shown by its records.

The relief is transaction-specific, temporary, and reversible. Alternatively, Plaintiff requests immediate preservation and expedited production sufficient for the Court to determine an appropriate preliminary restraint.

Dated: July 23, 2026

Respectfully submitted,

/s/ Y.S.
Y.S., Plaintiff Pro Se

23

**CERTIFICATION OF COMPLIANCE WITH WORD LIMIT**

I hereby certify that the foregoing motion complies with the 5,500-word limitation set forth in DDD Civ. P.S. III(A)(2). According to the word-count function of Microsoft Word, the motion contains 5,500 words, excluding the items excluded from the word limitation by the Court's Practice Standards.

/s/ Y.S.
Y.S.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2026, I emailed a true and correct copy of the foregoing motion, together with its exhibits to the Clerk of the United States District Court for the District of Colorado at the email address authorized by the Clerk's Office.


Dated: July 23, 2026

/s/ Y.S.
Y.S., Plaintiff Pro Se